The Honorable Steve Ehlmann Representative, District 19 State Capitol Building, Room 201E Jefferson City, Missouri 65101
Dear Representative Ehlmann:
This opinion is in response to your question asking:
 Can the City of St. Charles reinstate a band tax pursuant to 71.640 without first getting voter approval?
We understand, from information supplied with your opinion request, that the City of St. Charles established a band tax in 1929 in accordance with the statutory section in effect at that time which allowed cities of less than 25,000 population to levy such a tax. The current version of that statute is numbered Section 71.640, RSMo. In 1977, the population of the City of St. Charles had reached more than 35,000. In 1978, the city concluded it was no longer authorized by Section 71.640 to levy the band tax, and the tax was discontinued in 1978.
In 1979, Section 71.640 was amended to allow certain cities having a population of over 35,000 to levy such a tax. Section71.640, RSMo 1986, as amended by House Bill No. 465, 80th General Assembly, First Regular Session (1979), provides:
 71.640. Tax for band fund authorized. — Any city, village or town having a population of less than twenty-five thousand and any city having a population of more than thirty-five thousand located in any county of the first class contiguous to a county of the first class having a charter form of government and not containing any part of a city of over four hundred thousand, howsoever organized, and irrespective of its form of government, may, by one of the two methods authorized in section 71.650, levy a tax for use in providing free band concerts, or equivalent musical service by the band upon occasions of public importance. [Emphasis added.]
Section 71.650, RSMo 1986, provides:
 71.650. Tax for band fund — limitations. — 1. The mayor and council, board of aldermen or board of trustees may levy a tax of not more than one-half mill on each one dollar assessed valuation on all property in such city, village or town, or, when initiated by a petition signed by at least ten percent of the voters, the question shall be submitted to the voters, and a majority of the voters thereon shall be sufficient to carry the provisions of this law into effect, and it shall become the duty of the mayor and council, board of aldermen or board of trustees to levy each year on all the property in such city, village or town, a tax of not to exceed two mills, or such part thereof as shall be petitioned for, on each one dollar assessed valuation.
 2. The question shall be submitted in substantially the following form:
 Shall . . . . . . . (name of city, town, or village) levy a tax of . . . . . . . mills on each one dollar assessed valuation for the creation of a band fund?
 3. The levy made under either of the options of sections 71.640 to 71.670 shall not increase the tax levy of any such political subdivision to exceed the limitations fixed and prescribed by the constitution and laws of this state.
In Attorney General Opinion Letter No. 196-87, a copy of which is enclosed, this office addressed a similar question asking whether a county nursing home district which had voluntarily discontinued a property tax levy in 1977 could reimpose the tax without voter approval. We concluded that the district could not impose the property tax without voter approval.
On November 4, 1980, the voters in this state adopted what is commonly referred to as the Hancock Amendment. Article X, Section 22 of the Missouri Constitution, which was adopted as part of the Hancock Amendment, provides in part:
 Section 22. Political subdivisions to receive voter approval for increases in taxes and fees — rollbacks may be required — limitation not applicable to taxes for bonds. (a) Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon . . . .
In 1980, at the time of the adoption of this constitutional section, the City of St. Charles did not impose the property tax in question.
In Wenzlaff v. Lawton, 653 S.W.2d 215 (Mo. banc 1983), the Missouri Supreme Court in interpreting this provision stated:
 We first observe that § 22(a) contains two separate and distinct clauses. We think it is clear that the first clause prohibits political subdivisions from levying, without voter approval, a tax that was not authorized by law when the Amendment was adopted. We think it equally clear that the second clause requires voter approval before there can be an increase
in the current levy of an existing tax above the current levy authorized by law on November 4, 1980.
 Here, the cities increased the current levy of the taxes in question above the current levy in effect on November 4, 1980. They contend they have the authority, under the Amendment, to increase property taxes, without the required approval of the voters, up to the maximum rate authorized by law. This argument ignores the second clause of § 22(a) and the language therein concerning "current levy of an existing tax."
* * *
 In considering the provisions as a whole, in harmony with all other provisions, we reject cities' contention. To do otherwise would amount to an unnatural construction and render the second clause meaningless. Our conclusion is consistent with the objectives of the Amendment as understood by the voters. The official ballot title for the Amendment specifically informed the electorate that it "prohibits local tax or fee increases without popular vote." [Emphasis in original.] Id. at 216-217.
* * *
The band tax levy of the City of St. Charles at the time of the adoption of the Hancock Amendment was zero. Applying the reasoning set forth in Wenzlaff v. Lawton, supra, the city may not impose the band tax in question without voter approval.
CONCLUSION
It is the opinion of this office that the City of St. Charles may not impose a band tax pursuant to Section 71.640, RSMo 1986, without voter approval.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosure: Opinion Letter No. 196-87